IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| PAUL BERGE and TIMOTHY KREISSLER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-2310 |
| | ) | |
| CITY OF KANKAKEE, POLICE AND FIRE COMMISSION OF THE CITY OF KANKAKEE, CHIEF FRANK KOSMAN, MAYOR CHASTITY WELLS-ARMSTRONG, WILLIE HUNT, NICKEY F. YATES, Individually and in their Official Capacity, | ) ) ) ) ) ) ) | JURY TRIAL DEMAND |
| Defendants. | ) | |

## COMPLAINT

PLAINTIFFS, Paul Berge ("Berge") and Timothy Kreissler ("Kreissler"), by and through their attorneys, The Herbert Law Firm, for their complaint against Defendants, City of Kankakee ("Department"), Police and Fire Commission of the City of Kankakee ("Commission"), Chief Frank Kosman ("Chief"), Mayor Chastity Wells-Armstrong ("Mayor"), Willie Hunt ("Hunt"), and Nickey F. Yates ("Yates") individually and in their official capacity, alleges and states as follows:

## NATURE OF THE ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983 which prohibit discrimination on the basis of race.

## JURISDICTION

2. This suit alleges violations of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1983. This Court has jurisdiction of this action pursuant to 42 U.S.C. § 2000e(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. Venue of this Complaint is proper in the Central District of Illinois, as all actions alleged herein occurred within the County of Kankakee, State of Illinois, which lie within the Central District of Illinois. Venue in this Court is proper pursuant to 42 U.S.C. § 2000e-5(f)(3).

4. All conditions precedent to filing suit have been met. Plaintiffs timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), as required by 42 U.S.C. § 2000(e)-5(e)(1) on February 3, 2020 and was cross-filed with the Illinois Department of Human Rights ("IDHR"). See EEOC Charges of Discrimination attached hereto as Exhibit "A".

5. Exhibit "A" are true and accurate copies of the Plaintiffs' charges of discrimination.

6. The United States Department of Justice, Civil Rights Division issued "right to sue" letters dated August 7, 2020. See DOJ Right to Sue Letters attached hereto as Exhibit "B".

7. Exhibit "B" are true and accurate copies of the right to sue letters.

## PARTIES

8. Plaintiff, Paul Berge is a Caucasian male and at all relevant times herein, was a resident of Kankakee County, Illinois and an employee of Defendant City of Kankakee, holding the position of Sergeant with the Kankakee Police Department.

9. Plaintiff, Paul Berge is protected by Title VII of the Civil Rights Act of 1964 from discrimination because of race pursuant to 42 U.S.C. § 2000e-2(a).

10. Plaintiff, Timothy Kreissler is a Caucasian male and at all relevant times herein, was a resident of Kankakee County, Illinois and an employee of Defendant City of Kankakee, holding the position of Sergeant with the Kankakee Police Department.

11. Plaintiff, Timothy Kreissler is protected by Title VII of the Civil Rights Act of 1964 from discrimination because of race pursuant to 42 U.S.C. § 2000e-2(a).

12. Defendant, Chief Frank Kosman (hereinafter "Chief") is the Chief of Police for the City of Kankakee since in and around May 2019.

13. Defendant, Mayor Chastity Wells-Armstrong (hereinafter "Mayor") is an African-American female and served as the elected Mayor of the City of Kankakee from in and around April

2017 to the present.

14. Defendant, Willie Hunt (hereinafter "Hunt") is an African-American male and in and around July 2017 was appointed as the Deputy Chief of the City of Kankakee Police Department.

15. Mayor Wells-Armstrong operated in her official capacity as the Mayor of the City of Kankakee and was responsible for the hiring and supervision of all personnel necessary to operate and maintain the City of Kankakee Police Department. Mayor Wells-Armstrong is sued in both her individual and official capacities.

16. Hunt operated in his official capacity as the Deputy Chief of Police and was responsible for the hiring, training and supervision of all personnel necessary to operate and maintain the City of Kankakee Police Department. Hunt is sued in both his individual and official capacities.

17. Defendant, City of Kankakee, is a municipality incorporated under the laws of the State of Illinois.

18. At all relevant times, Defendant, City of Kankakee was an employer, joint employer or prospective employer as defined in 42 U.S.C. § 2000e and was doing business at 209 N. Indiana Avenue, Kankakee, Illinois 60901.

19. Defendant, Police and Fire Commission of the City of Kankakee (hereinafter "the Commission") along with the Mayor, are responsible for the full management and control of the Police Department, and all regulations and orders thereof shall be promulgated through the Chief of Police.

20. All subordinate officers and members of the department shall be subject to such rules and regulations as shall, from time to time, be prescribed by the Chief of Police with the concurrence of the Mayor and the Police Committee.

21. Defendant, Nickey Yates is and/or was a commissioner for the Police and Fire Commission of the City of Kankakee at all relevant times pertinent hereto.

## FACTS APPLICABLE TO ALL COUNTS

22. The City of Kankakee Police Department is an executive department of the municipality.

23. The Chief of Police is appointed by the Mayor, by and with the advice and consent of the Kankakee City Council. Commission members are appointed by the Mayor.

24. In and around April 2017, Chastity Wells-Armstrong was elected to the position of Mayor for the City of Kankakee.

25. Mayor Wells-Armstrong is the first African-American to be elected as Mayor of Kankakee.

26. In and around June 2017, Mayor appointed Price Dumas as Interim Chief of Police, but Dumas could not obtain the required majority of the City Council to consent to his appointment. City Council voted against him on three occasions.

27. Dumas previously served as a Kankakee Patrolman for approximately 13 years before leaving the Department in 2006 to join the Illinois State Police; and, in and around 2003 was one of five African-American policemen who sued the City of Kankakee over allegations of racial discrimination.

28. In and around July 2017, Mayor appointed Lieutenant Willie Hunt, an African-American male, to the position of Deputy Chief; Hunt was also one of the five African-American policemen who sued the City of Kankakee over allegations of racial discrimination in and around 2003.

29. Prior to his appointment to Deputy Chief, Hunt was reprimanded for sharing racially charged images and text on his social media accounts, including but not limited to posts: (1) about white supremacy; (2) promoting "Black Lives Matter" and calling for a social media shutdown; an image of a Caucasian police officer holding a baton over an African-American's head with the text

"[y]ou can't make a time in history when black people weren't targeted by the police;" (3) text about "the black race rising and conquering the world;" (4) posts comparing Caucasians to monkeys and referring to Caucasians as "Neanderthals;" and (5) text about "white privilege" and how Blacks have suffered at the hands of white people for generations.

30. In and around January 2018, a new list was posted for the promotion from Sergeant to Lieutenant; the list was signed off by Police and Fire Commissioner Nicky Yates.

31. Stanard and Associates, Inc. conducted the testing process; the top three (3) candidates for the promotion were as follows: Ranked number one (1) was Plaintiff, Timothy Kreissler, a Caucasian, male with a final score of 87.37; Ranked number two (2) was Plaintiff, Paul Berge, a Caucasian, male with a final score of 82.63; and, Ranked number three (3) was Michael Sneed, an African-American, male with a final score of 73.40.

32. In and around February 2018, a new list was posted for the promotion from Patrolman to Sergeant; the list was signed off by Police and Fire Commission.

33. The top three (3) candidates for the promotion were as follows: Ranked number one (1) was Bradford Latham, Caucasian, male with a final score of 84.33; Ranked number two (2) was Michael Coash, Caucasian, male with a final score of 80.27; and Ranked number three (3) was Steve Hunter, African-American, male with a final score of 79.67.

34. In and around February 2018, Hunter was promoted to Sergeant as the number three (3) ranked candidate on the Sergeant's promotional list, skipping over two Caucasian, male candidates.

35. In and around May 2018, Patrol Commander Christopher Kidwell, a Caucasian, male was demoted to the rank of Lieutenant; Kidwell had approximately eighteen (18) years of experience at the rank of Lieutenant or higher.

36. Donnell Austin, African-American, male replaced Patrol Commander Kidwell; Austin had only approximately three (3) years of experience at the rank of Lieutenant.

37. Immediately prior to being promoted to Commander, then Lieutenant Austin, made a report to the FBI that the Mayor, Chief Dumas and Deputy Chief Willie Hunt were engaged in criminal conduct concerning work being done for the City of Kankakee by Auto Lab owners. See Exhibit "C".

38. In and around June of 2018, the new Command Staff consisting of Hunt and Austin, along with the Mayor, accused a veteran and highly decorated Caucasian police officer, Michael Shreffler, of posting negative comments about the Mayor and Command Staff on social media accounts.

39. Shreffler was terminated. Hunt, Austin and the Mayor never provided Shreffler with notice of charges and never provided Shreffler with an opportunity to defend himself at a hearing before the Commission in violation of Illinois State law, the Collective Bargaining Agreement and Department policies.

40. The Commission ratified Shreffler's termination knowing that he had a property interest in his continued employment and deprived Shreffler of his due process rights when it terminated him without notice, an opportunity to be heard, and without the Chief carrying his burden by proving the allegations beyond a preponderance of the evidence.

41. Yates, a commissioner, signed off on Shreffler's illegal termination.

42. Nicky Yates has made various racial comments in a public setting including comments such as "[h]e was treated better in Iraq than the white folks in Kankakee."

43. In and around August 2018, acting Chief Price Dumas resigned from his position amid a criminal investigation conducted by the Illinois State Police into his misuse of Department computers for reasons personal to him and the Mayor.

44. In and around August 2018, the Mayor appointed Hunt to replace Dumas as head of the police department.

45. In and around August 2019, Michael Sneed was promoted to Lieutenant. Sneed's promotion skipped two (2) higher-ranked candidates, namely Plaintiffs, Berge and Kreissler, both Caucasian, male Sergeants.

46. Sneed's promotion was the second time, in less than two years and during the Mayor's administration, that significantly lower-ranked, African-American officers were promoted over higher-ranked, Caucasian officers.

47. Upon information and belief, Kreissler inquired with Chief Kosman why he, the highest-ranked candidate and Sergeant, was passed over and Sneed, who scored significantly lower than Kreissler, was promoted. Chief Kosman responded that the leadership in the police department does not look enough like the citizens of Kankakee.

48. In and around August 2019, Plaintiff, Berge spoke with Chief Kosman to inquire why he, the second-highest ranked candidate and Sergeant, was passed over and Sneed, who scored significantly lower than Berge was promoted. Chief Kosman agreed with Berge when he stated that, "Sneed looked more like the Mayor's administration."

49. According to the United States Census Bureau, the City of Kankakee's population as of July 1, 2019, reflects the following: White (Caucasian) residents 51.4%, including Hispanic or Latino residents 16.8%; Black (African-American) residents 41.5%; American Indian resident .5%; Asian residents 1.1%; Two or more races 1.7%.

50. The Defendants created a Command Staff that was predominately African-American, despite the majority of Kankakee residents being Caucasian.

51. During the Mayor's tenure, beginning in and around April 2017 through the present, there have been multiple acts of overt racism against Caucasian, non-African-American employees.

52. The Mayor has made racial comments including accusing a high-ranking officer of having a résumé that "was too white," statements that "[w]e have a problem with the way our white

7

officers treat people" and has accused a high ranking former Caucasian chief of being racist.

53. The Mayor indicated that race relations at the department were systemic and the department needed a "new leadership" that would not tolerate such problems.

54. Mayor Wells-Armstrong has appointed multiple City administrators, including Police Department command staff based solely on their race as African-American and not based on merit.

55. These acts have shown an ongoing pattern of widespread practice, policy or custom of racism within the Kankakee Police Department, which continues to the present.

### FACTS SPECIFIC TO PLAINTIFF, PAUL BERGE

56. Plaintiff, Paul Berge ("Berge") was hired as a Patrolman for the Kankakee Police Department on or about February 11, 2006.

57. In and around 2016, Berge was promoted to the position of Sergeant.

58. During his tenure with the Kankakee Police Department, Berge has been a Midnight Shift Supervisor as a Sergeant; been a Kankakee Area Metropolitan Enforcement Group (KAMEG) Special Agent; been a K9 Handler; been a Special Weapons and Tactics (SWAT) Team Member; Illinois Law Enforcement Alarm System (ILEAS) Mutual Aid Team Member; been an Arrest and Control Tactics Instructor; been a Less than Lethal Munitions Instructor; been a Rapid Deployment/Active Threat Instructor; and, been a Crisis Intervention Team (CIT) Member.

59. On or about July 3, 2018, Berge was injured on duty when attempting to apprehend a suspect.

60. Later in July of 2018, Berge filed a workers' compensation claim for his injuries, this matter was later settled in 2020 shortly before Berge was brought up for charges seeking his termination.

61. Berge also filed a discrimination charge with the EEOC on February 3, 2020.

62. On July 30, 2020 during an interrogation, Berge made a complaint about being sexually harassed in the workplace by Commander Donell Austin.

63. The Chief and Deputy Chief Willie Hunt subsequently secretly disclosed to the accused Donell Austin the complaint made by Berge at his interrogation.

64. Berge's complaint was ignored and never investigated.

65. On August 13, 2020, charges were filed against Berge seeking his termination in retaliation for filing a worker's compensation claim, making an EEOC charge of discrimination and reporting sexual harassment in the workplace.

66. The charges were filed by the Chief in concert with the defendants Austin, Hunt and the Mayor.

67. The charges filed were pretextual, improper, and in violation of Illinois State Law, the Collective Bargaining Agreement and Kankakee Police Department policy as a means to intentionally deprive Berge of a fair and impartial hearing.

68. A hearing was held on September 15 and September 20, 2020 on this matter before the Police and Fire Commission of the City of Kankakee, Defendant Yates sat on the Board for the hearing and voted on the matter.

69. Defendant Yates interfered with the hearing and acted outside his role as board member to ensure that Berge would be deprived of a fair hearing.

70. At one point during the hearing, Yates asked Berge what role Berge played in a vote of "no confidence" taken against Chief Dumas, Deputy Chief Hunt and Commander Austin by a group of Caucasian officers from Kankakee, which did not include Berge. See Exhibit "D", tr. 280.

71. His question was not relevant in any way to the hearing; it lacked any foundation; it prejudiced Berge before the Board; and, it proved that the charges against Berge were pretextual and he would not receive a fair hearing before an impartial Commission.

72. On October 14, 2020, the Commission found Berge guilty of all charges and set a later date for decision whether discharge is the appropriate penalty. At the time of filing this complaint no decision has been announced.

## FACTS SPECIFIC TO PLAINTIFF, TIMOTHY KREISSLER

73. Plaintiff, Timothy Kreissler ("Kreissler") was hired as a Patrolman for the Kankakee Police Department in and around March 2002, after being ranked number one (1) on the eligibility list of over 150 applicants.

74. In and around February 2006, Kreissler was promoted to detective after testing and scoring the highest on the promotional exam; thus, being the first person on the promotional list.

75. In and around August 2008, Kreissler applied for a promotion to Sergeant.

76. Kreissler tested and scored first on the Sergeant's promotional list and was promoted to Sergeant in and around July 2009.

77. In and around September 2009, Kreissler transferred to the patrol midnight shift and served as Shift Sergeant.

78. In and around 2014, Kreissler took the test for the Detective Sergeant position and scored first on the promotional list.

79. In and around 2015, Kreissler was promoted to Detective Sergeant in the Detective Bureau and holds that position as of the time of the filing of this Complaint.

## COUNT I
**Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.** *et. seq.*
(against Defendant City of Kankakee)

80. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

81. By reason of the foregoing, Plaintiffs were denied promotions to the position of lieutenant in violation of 42 U.S.C. § 2000e-2(a).

82. Defendants' conduct alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for not promoting either Plaintiff Berge or Plaintiff Kreissler were not the true reasons, but instead, were pretext to hide their discriminatory animus.

83. Defendants acted willfully and in bad faith when it failed to promote Plaintiffs.

84. Therefore, Plaintiffs Berge and Kreissler were denied their rights under the Civil Rights Act of 1964.

WHEREFORE, Plaintiffs Berge and Kreissler respectfully request that the Court enter judgment in favor of Berge and Kreissler on Count I, grant them relief including compensatory damages, attorneys' fees and costs, and requests all other just and proper relief.

## COUNT II
### Reprisal for Engaging in Protected Activities
(against Defendant City of Kankakee)

85. Each of the foregoing Paragraphs is incorporated as if fully set forth herein.

86. Defendant City's conduct as alleged above constitutes retaliation for Plaintiffs Berge and Kreissler because they engaged in activities protected by Title VII.

87. The stated reasons for Defendant City's conduct was not the true reasons, but instead was pretext to hide its retaliatory animus.

WHEREFORE, Plaintiffs Berge and Kreissler respectfully request that the Court enter judgment in favor of Berge and Kreissler on Count II, grant them relief including compensatory damages, attorneys' fees and costs, and requests all other just and proper relief.

## COUNT III
### § 1983, *Monell* Claim

88. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

89. Defendant City of Kankakee maintained a policy, custom and/or widespread practice of discriminating against Caucasian males in testing, promotions, assignments, transfer and

classification.

90. Plaintiffs have a 14th amendment equal protection right to be free from racial discrimination as a factor in determining their qualifications for promotion pursuant to the U.S. Constitution and 42 U.S.C. 1983.

91. Plaintiffs were deprived of their 14th Amendment right to be free from racial discrimination as a result of the Defendants' policy, custom and/or widespread practice of discriminating against Caucasian males in testing, promotions, assignments, transfer and classification.

92. Said policy, custom and/or widespread practice was carried out by Defendant City of Kankakee, Mayor Wells-Armstrong, Hunt, Kosman, Yates and the Police and Fire Commission and operated to deprive Plaintiffs' equal protection and thus violated rights guaranteed by the Fourteenth Amendment of the United States Constitution.

93. Defendants took the action set forth herein with the malicious intent to cause Plaintiffs damages and to deprive them of the rights guaranteed by the U.S. Constitution.

94. Plaintiffs Berge and Kreissler suffered damages in lost wages and emotional distress and Defendants' actions were a proximate cause of their injuries.

WHEREFORE, Plaintiffs Berge and Kreissler demand judgment against Defendants for a promotion to Lieutenant with the City of Kankakee Police Department, compensatory damages, as allowed by law, prejudgment interest, attorneys' fees and costs, and such other and further relief as the court deems proper.

## COUNT IV
### § 1983, Equal Protection
(against all individual Defendants in their Individual Capacities)

95. Each of the foregoing Paragraphs as incorporated as if fully set forth herein.

96. Plaintiffs are both male, Caucasians and are members of a protected class.

97. Defendants have treated Plaintiffs differently than other similarly situated individuals without any legitimate governmental purpose for doing so.

98. Defendants' actions with respect to Plaintiffs were motivated, at least in part by a discriminatory purpose, in violation of Plaintiffs' constitutional rights to Equal Protection under the law.

99. As a direct and proximate result of this Equal Protection violation, Plaintiffs have suffered damages, including emotional damages, which will be proved at trial.

WHEREFORE, Plaintiffs Berge and Kreissler respectfully request that the Court enter judgment in favor of Berge and Kreissler on Count IV, grant them relief including compensatory damages, punitive damages, attorneys' fees and costs, and requests all other just and proper relief.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues.

Respectfully submitted,

 /s/ Daniel Q. Herbert
 /s/ Kelly A. Krauchun

The Herbert Law Firm
Attorneys for Plaintiffs
206 S. Jefferson, Suite 100
Chicago, IL 60661
(312) 655-7660
Dan.herbert@danherbertlaw.com
Kelly.krauchun@danherbertlaw.com
Terri.ryan@danherbertlaw.com