E-FILED
Friday, 17 June, 2022  10:55:00 AM
Clerk, U.S. District Court, ILCD

**BEFORE THE**
**BOARD OF FIRE AND POLICE COMMISSIONERS**
**CITY OF KANKAKEE, KANKAKEE COUNTY, ILLINOIS**

IN THE MATTER OF DISCIPLINARY CHARGES )
FILED AGAINST SERGEANT PAUL BERGE )
BY CHIEF OF POLICE, FRANK KOSMAN )

### FINDINGS OF FACT, DECISION AND ORDER

1. The Board of Fire and Police Commissioners of the City of Kankakee exists pursuant to the provisions of the Illinois Fire and Police Commission Act, 65 ILCS 5/10-2.1-1 *et seq.* and has all authority granted by the provisions of the Fire and Police Commission Act.

2. At all times during the hearing of these charges Dr. Willie Davis, Nickey Yates, Mario Flores, Cortney Bessant and Dawn Landwehr were the duly appointed and serving members of the City of Kankakee Board of Fire and Police Commissioners.

3. On August 13, 2020, Kankakee Police Chief, Frank Kosman, filed charges seeking the termination of Police Sergeant Paul Berge, with the Board of Fire and Police Commissioners. (Board Exhibit #1)

4. At all times mentioned herein, Paul Berge was a member of the City of Kankakee Police Department holding the promoted rank of sergeant and under the jurisdiction of the Board of Fire and Police Commissioners. (Board Exhibit #1)

5. The Commission commenced hearing on the charges filed against Sergeant Berge on September 15, 2020. The hearing was continued to September 30, 2020, October 14, 2020 and concluded on December 1, 2020.

6. The Kankakee Police Department and Chief Kosman were represented at the hearing by Attorney Michael McGrath and Sergeant Paul Berge was represented by Attorney Daniel Herbert. The Board was represented by Attorney John Kelly. The Board appointed Attorney Kelly as the hearing officer for this matter. Both parties received all notices of hearing and were given a full and fair opportunity to present their cases. Both parties presented documentary evidence and witness testimony. The Board admitted (1) one exhibit as a Board Exhibit, seven (7) exhibits as exhibits on behalf of Chief Kosman and three (3) exhibits on behalf of Sergeant Berge.

7. No questions have been raised regarding the jurisdiction of the Board of Fire and Police Commissioners to hear these charges.

8. The burden to prove the allegations contained in the Charges filed by Chief Kosman was on the Chief to prove by a preponderance of the evidence that the violations of the Rules

**EXHIBIT O**          **DEFENDANTS 002056**

and Regulations of the Kankakee Police Department alleged in the Charges filed with the Commission occurred.

9.   At the outset of the hearing the Board of Fire and Police Commissioners determined to conduct the hearing in a bifurcated manner to allow for the presentation of evidence relative to the charges and, if any charges were sustained, the presentation of evidence relative to the appropriate penalty. (Transcript, 9/15/20, pp. 4-5).

10.   At the outset of the hearing, Sergeant Berge filed a Motion for a Bill of Particulars and a Motion to Dismiss. Chief Kosman, through his counsel filed a written response to the Motions. After argument on both Motions by Attorneys Herbert and McGrath, Board deliberated on those Motions. By a unanimous vote, the Board determined to deny the Motion for the Bill of Particulars and the Motion to Dismiss, finding that sufficient information was provided in the charges and the interrogation conducted of Sergeant Berge to enable Sergeant Berge to defend himself. (Transcript, 9/15/20, pp. 5-17).

11.   Commander Donnell Austin was called as a witness by Chief Kosman. Commander Austin served the Kankakee Police Department for twenty years and served as a Commander for two years. Commander Austin testified that the Police Department operates under written policies and procedures. The policies and procedures are distributed to the officers through a company named Lexipol that assists the City in policy updates and training. The Kankakee Police Department is staffed with 68 officers and the rank structure includes the Chief, Deputy Chief, 2 Commanders, Lieutenants, Sergeants and Patrol Officers. (Transcript, 9/15/20, pp. 36-41).

12.   Commander Austin testified that he believed that the term "insubordination" referred to an officer or an employee who does not follow a directive from a supervisor or who, in some way, disregards an order. (Transcript, 9/15/20, p 43).

13.   Commander Austin testified that the Kankakee Police Department was experiencing a large number of criminal incidents at a location in the 400 block of south Dearborn. These incidents included criminal damage to property, public intoxication, drugs and suspicious activity. (Transcript, 9/15/20, pp. 43-44).

14.   Commander Austin received an email from the Deputy Chief on July 14, 2020 indicating that one of the City elected officials had complained about the activity at 400 South Dearborn. In the email, the Alderwoman asked the Police Department to take some action regarding that location. (Transcript, 9/15/20, pp. 50-52).

15.   On the morning of July 15th, Commander Austin had a conversation with Deputy Chief Hunt who asked him to check out the area. (Transcript, 9/15/20, p. 52).

16.   Commander Austin spoke to Sergeant Berge, the acting day shift commander for July 15th, and asked him to have someone check on the Dearborn location. Commander Austin told Sergeant Berge that if the officer who went to the Dearborn location observed

2

DEFENDANTS 002057

any ordinance violations, citations should be written. Commander Austin spoke to Sergeant Berge in person at about 8:00 a.m. in the Police Department squad room and later that morning, called him on the phone about the Dearborn location. (Transcript, 9/15/20, pp. 52-57).

17. At about 1:35 p.m. on July 15th, Commander Austin went to the Sergeants' Office in the Police Department to talk to Sergeant Berge about any enforcement action at 400 South Dearborn. Commander Austin heard radio traffic regarding the location but was not aware of the outcome of the call. (Transcript, 9/15/20, pp. 57-59).

18. When Commander Austin went to the Sergeant's Office, he was calm and was not angry. Sergeant Berge was in the Office with Sergeant Tyson. Both Sergeant Berge and Sergeant Tyson were sitting at their respective desks. Sergeant Berge had his feet on his desk and was leaning back in his chair when Commander Austin approached. (Transcript, 9/15/20, pp. 60-61).

19. Commander Austin approached Sergeant Berge and called his name and Sergeant Berge did not respond. It appeared to Commander Austin that Sergeant Berge was sleeping when he approached. His eyes were closed. Commander Austin called his name several times and Sergeant Berge did open his eyes. Commander Austin waved his hand in front of the Sergeant's face. He testified that Sergeant Berge seemed groggy. (Transcript, 9/15/20, p. 63).

20. Commander Austin testified that he looked at Sergeant Tyson to see if Sergeant Tyson was observing Sergeant Berge's behavior. Sergeant Tyson said that something must be wrong with Sergeant Berge. (Transcript, 9/15/20, p. 63).

21. Commander Austin then tapped on Sergeant Berge's desk and called his name again. Sergeant Berge said something that was incoherent, and Commander Austin could not understand what he was talking about. Commander Austin then asked Sergeant Berge if police officers had gone by the Dearborn location. Sergeant Berge asked Commander Austin what address he was talking about. (Transcript, 9/15/20, pp. 64-65).

22. Sergeant Berge continued to ask Commander Austin questions about the Dearborn matter and appeared to be rude and dismissive of Commander Austin. Commander Austin testified that he did not raise his voice and talked to Sergeant Berge in a normal tone of voice. (Transcript, 9/15/20, pp. 65-66).

23. Sergeant Berge stood up behind his desk and Commander Austin backed away. The door from the Sergeants' Office into the Squad Room was open and Sergeant Tyson was still in the room when this took place. Sergeant Berge came around the desk and approached Commander Austin questioning him, his authority, and his leadership of the

3

DEFENDANTS 002058

Patrol Division. Sergeant Berge was within one foot of Commander Austin when he made these statements. (Transcript, 09/15/20, pp. 66-68).

24. Commander Austin testified that he believed Sergeant Berge's conduct during this episode was insubordinate. (Transcript, 09/15/20, p. 68).

25. While Commander Austin was talking to Sergeant Berge, the telephone on the Sergeant's desk rang. Sergeant Berge answered the phone and began to carry on a conversation. Commander Austin told him to hang up the phone. Sergeant Berge refused to hang up the phone and continued talking. Commander Austin told Sergeant Berge to hang up the phone four times. After the fourth time, Commander Austin reached over and pushed down the receiver buttons to hang up the phone. (Transcript, 9/15/20, pp. 69-70).

26. After Sergeant Berge put down the receiver, Commander Austin told him that he was relieved of duty for the day and that he was to gather his things and leave the Police Department. (Transcript, 9/15/20, p. 71).

27. Commander Austin testified that Sergeant Tyson left the Sergeants' Office to conduct the roll call for the on-coming shift. Sgt. Klopp came into the Sergeants' Office to see if he could assist. The door from the Sergeants' Office to the Squad Room was open and the voices of Sergeant Berge and Commander Austin were raised. Commander Austin believed the officers in the Squad Room could see the actions of Sergeant Berge through the window from the Sergeants' Office that looks out into the Squad Room. Commander Austin believed there were 12 to 15 people present in the Squad Room in anticipation of the on-coming shift briefing. (Transcript, 9/15/20, pp. 71-73).

28. Commander Austin believed Sergeant Berge directly disobeyed multiple orders and was disrespectful to him. Commander Austin prepared a report of the events of July 15th and forwarded it to Chief Kosman. He prepared this report on July 16th. In that report he indicated sections of the Kankakee Police Department Policy that he believed were violated. (Transcript, 9/15/10, pp. 74-75).

29. Commander Austin denied ever putting his foot up on Sergeant Berge's desk or thrusting his waist or crotch toward Sergeant Berge. (Transcript, 9/15/20, p. 75).

30. On cross-examination, Commander Austin testified that the definition of "insubordination" was his definition, not the definition contained in the Police Department Policy. However, he did consult the Policy definition when he prepared his report. (Transcript, 9/15/20, pp. 79-80).

31. Commander Austin testified that he did see people loitering in the area of 400 South Dearborn, but he could not recall the date. He did send communication to his subordinates regarding the property but did not have copies of the messages. (Transcript, 9/15/20, pp. 93-95).

4

DEFENDANTS 002059

32.  Commander Austin did not issue a written directive to Sergeant Berge to have officers check on the Dearborn address on July 15, 2020. He talked to him in person and by phone. Commander Austin did view his conversation with Sergeant Berge to be a direct order to have officers patrol the area of 400 South Dearborn. (Transcript, 9/15/20, pp. 97-100).

33.  Commander Austin did not view Sergeant Berge having his feet up on the desk in the Sergeants' Office as a violation of policy or insubordination. (Transcript, 9/15/20, pp. 100-101).

34.  Commander Austin thought something was wrong with Sergeant Berge based on his failure to respond to him. Commander Austin could not tell what the Sergeant's state of mind was and thought he might be intoxicated or tired. (Transcript, 9/15/20/, pp. 101-102).

35.  Commander Austin did not smell alcohol on Sergeant Berge's breath when he was close to him. He thought the Sergeant might have been intoxicated based on the incoherent statements he made. (Transcript, 9/15/20, pp. 103-104).

36.  Commander Austin testified that it is part of the Sergeant's duties to answer the phone when it rings. The call Sergeant Berge answered when Commander Austin was talking to him was from a police records clerk and concerned police business. (Transcript, 9/15/20, pp. 104-105).

37.  Commander Austin was aware of an allegation that Commander Austin stuck his crotch in Sergeant Berge's face and that he had intimidated Sergeant Berge. (Transcript, 9/15/20, pp. 106-107).

38.  Commander Austin testified that he notified Deputy Chief Hunt and Chief Kosman of the incident with Sergeant Berge shortly after it took place. He told them that he had to relieve Sergeant Berge of duty. He did not provide details of the incident to either the Chief or the Deputy Chief. He started his report on the 15th and finished on the 16th. (Transcript, 9/15/20, pp. 110-115).

39.  In his report of the Sergeant Berge incident, Commander Austin noted that there was a 2019 incident in which Sergeant Berge was noncompliant with an order given by a minority supervisor. Sergeant Berge was not disciplined for this incident. Commander Austin mentioned this because he was concerned that Sergeant Berge might have concerns with minority supervisors. (Transcript, 9/15/20, pp. 119-120).

40.  Sergeant Timothy Klopp was called to testify and stated that he held the rank of Sergeant for nine years and was on duty on July 15, 2020, He worked the afternoon shift that day and was present in the Sergeants' Office at about 1:30 or 1:45 that afternoon. (Transcript, 9/15/20, p. 148).

DEFENDANTS 002060

41.     Sergeant Klopp entered the Sergeants' Office after walking through the squad room. Present in the Sergeants' Office were Commander Austin, Sergeant Berge, and Sergeant Tyson. Commander Austin and Sergeant Berge appeared to be in a discussion. Sergeant Klopp did not know what the discussion was about. He did hear Commander Austin say something to the effect that Sergeant Berge was relieved from duty and could go home. Sergeant Klopp did he say he was in the office for only about 30 seconds. (Transcript, 9/15/20, p. 152).

42.     Sergeant Klopp stated that the conversation was louder than a normal conversation but that it did not seem threatening in any way. Sergeant Klopp left the Sergeants' Office and closed the door because the shift briefing for the afternoon shift was about to start and the conversation in the Sergeants' Office was louder than normal. (Transcript, 9/15/20, pp.153-155).

43.     Sergeant Klopp went back into the Sergeants' Office after Sergeant Tyson came out of the office and told him that perhaps he should go back into the Sergeants' Office because things were getting a little heated. Sergeant Tyson also told Sergeant Klopp that Sergeant Berge might need a representative. Sergeant Klopp was a union steward for the Sergeants' bargaining unit. Sergeant Klopp was only out of the Sergeants' Office for about 2 minutes. (Transcript, 9/15/20, pp.157-158).

44.     On his way into the Sergeants' Office, Sergeant Klopp looked through the window into the office and could see that Commander Austin and Sergeant Berge were standing very close to each other. He could hear loud voices but did not hear what was being said. When he entered the office, he went to the area between the Sergeants' desks and listened to what was being said. (Transcript, 9/15/20, pp. 159-160).

45.     Sergeant Klopp was not aware of what the conversation was about since he was not present during the majority of the discussion. At one point, Sergeant Berge said to Commander Austin "What have you done for your guys for the past 3 years?" Commander Austin responded by asking Sergeant Berge what he was talking about. Sergeant Klopp did not hear Sergeant Berge respond. (Transcript, 9/15/20, pp. 161-162).

46.     Sergeant Klopp testified that Commander Austin and Sergeant Berge continued to raise their voices to the level of almost shouting. Sergeant Klopp stated that he thought that the exchange had the potential of turning physical. Sergeant Klopp heard Commander Austin tell Sergeant Berge that he was relieved of his duties and to go home. Sergeant Klopp told both the Commander and Sergeant Berge to step back and tone down the intensity. Sergeant Klopp asked if he could help resolve whatever the issue was. (Transcript, 9/15/20, pp. 162-163).

DEFENDANTS 002061

47.    After Sergeant Klopp asked if he could help, Sergeant Berge returned to his desk and sat down. Commander Austin then gave Sergeant Berge a direct order that he was relieved from duty and that he was to go home. Sergeant Berge did not respond to the order and remained at his desk for 30 or 60 seconds. Sergeant Klopp then said to Sergeant Berge, "Paul, he is giving you a direct order. You know, maybe you should go home for now and take up the discussion another day." Sergeant Berge then gathered some things and left the office. (Transcript, 9/15/20, pp.164-165).

48.    Sergeant Klopp prepared a To-From Memo regarding the incident and delivered it to Commander Austin on July 15, 2020. (Transcript, 9/15/20, pp. 166-167).

49.    On cross-examination, Sergeant Klopp testified that both Commander Austin and Sergeant Berge were upset. Sergeant Klopp was concerned that the argument in the Sergeants' Office might have been disruptive to the roll call going on in the next room. He did not hear Commander Austin say anything about Sergeant Berge being intoxicated nor did he have any reason to believe Sergeant Berge was intoxicated. (Transcript, 9/15/20, p.170).

50.    Lieutenant Robin Passwater testified that he had been a member of the Kankakee Police Department for 31 years and had served as a lieutenant for 20 years. During his career he served as both acting Deputy Chief of Police and Chief of Police. (Transcript, 9/15/20, p. 175).

51.    Lt. Passwater was on duty on July 18, 2020 wearing a uniform and operating an unmarked police vehicle. Lt. Passwater testified he was aware that a protest march was scheduled for that day. Lt. Passwater went to the area of the march to see how large the crowd was. The crowd was about 10 people and Sergeant Miller, another Sergeant on duty that day said he thought he and another car could handle it. The location of the start of the march was in Bird Park. (Transcript, 9/15/20, pp.175-177).

52.    The individuals in the march were young people, possibly grade school age. Some had signs and banners. Parents of the young people were also present. Lt. Passwater was the Shift Commander that day and did not believe additional police presence was needed due to the size and age of the crowd. Police Chief Kosman was also present and was escorting the marchers. (Transcript, 9/15/20, p. 177).

53.    At about noon, Lt. Passwater received a phone call from Chief Kosman who asked Lt. Passwater to meet him at the rear of the courthouse. He was about four or five blocks away from the courthouse and arrived at the courthouse within two minutes. Chief Kosman did not tell the Lieutenant why he wanted to see him. (Transcript, 9/15/20, pp. 178-179).

DEFENDANTS 002062

54. When he arrived at the courthouse, Lt. Passwater observed Chief Kosman standing in the circle drive at the south end of the courthouse on the east side of the circle drive close to Harrison Avenue. Sergeant Berge was standing with Chief Kosman. Lt. Passwater identified the scene from a still picture made from the video cameras on the exterior of the courthouse. (Transcript, 9/15/20, p 179-180; Chief's Exhibit #7).

55. Lt. Passwater spoke with Chief Kosman who told him that Sergeant Berge was acting inappropriately by talking and interacting with the protestors at the courthouse. Chief Kosman asked Sergeant Berge not to do that and sent him home for the day. Sergeant Berge refused to leave the area. Chief Kosman told Lt. Passwater that he directed Sergeant Berge to leave the area. The interaction between Chief Kosman and Sergeant Berge had taken place before Lt. Passwater arrived at the courthouse. (Transcript, 9/15/20, pp. 181-183).

56. Sergeant Berge approached and told Lt. Passwater that he had not done anything wrong. Sergeant Berge told Lt. Passwater that he would do anything the Lieutenant said. Lt. Passwater told Sergeant Berge to do what the Chief told him to do and if the Chief had given him an order, to follow the order. (Transcript, 9/15/20, pp. 183-184).

57. Lt. Passwater testified that Sergeant Berge then went to his squad car and left the area. (Transcript, 9/15/20, p. 185).

58. Lt. Passwater testified that there was a recognized chain of command within the Kankakee Police Department and that the Chief was at the top of that chain. He also testified that the failure of a subordinate to follow a direct order from a superior officer was insubordination. Lt. Passwater prepared a report of the incident on July 19, 2020. (Transcript, 9/15/20, pp.

59. On cross-examination, Lt. Passwater testified that as the Shift Commander, he was Sergeant Berge's direct supervisor on July 18th. Lt. Passwater testified that he did not see Sergeant Berge commit any violations of Police Department rules. He testified Sergeant Berge worked for him on a number of shifts and that Sergeant Berge was a good officer. Lt. Passwater also testified that he did not believe Sergeant Berge was a racist. Sergeant Berge was never insubordinate to Lt. Passwater. (Transcript, 9/15/20, pp. 188-189).

60. Lt. Passwater was not aware of any other occasion in his career in which a subordinate officer refused to follow the order of the Chief of Police. (Transcript, 9/15/20, p. 190).

61. Sergeant Gary Tyson testified that he retired from the Kankakee Police Department in September of 2020 after 20 years of service. (Transcript, 9/23/20, p. 9).

62. Sgt. Tyson was on duty on July 15, 2020 and prepared a report of the incident which occurred in the Sergeant's Office. The report was dated June 29, 2020, but that was an erroneous date. Sgt. Tyson was in the Sergeants' Office on July 15th preparing for the

8

DEFENDANTS 002063

start of the afternoon shift that day. At about 1:45 p.m. both he and Sergeant Berge were seated at their desks in the Sergeants' Office. (Transcript, 9/23/20, pp. 9-11).

63.     Sgt. Tyson testified that Commander Austin entered the Sergeants' Office around 1:45 p.m. When Commander Austin entered, he stood in the doorway. He did not appear to be angry or excited. Commander Austin spoke to Sergeant Berge about a call from earlier in the day and asked what had happened. Sergeant Berge did not respond to Commander Austin. At the time Commander Austin spoke to him, Sergeant Berge was sitting at his desk with his feet up on the desk and his eyes closed. Sgt. Tyson stated that he did not know if Sergeant Berge was asleep and was not aware of how long his eyes were closed. (Transcript, 9/23/20, pp. 14-15).

64.     Sgt. Tyson called to Sgt. Berge when he did not respond to Commander Austin. Commander Austin called Sgt. Berge's name a couple of times before Sgt. Tyson called to him. Sgt. Tyson asked Sergeant Berge if he was okay. Sergeant Berge responded he was fine, just a little tired. Commander Austin again asked Sergeant Berge about the call and Sergeant Berge did not respond. (Transcript, 9/23/20, pp. 15-16).

65.     After that exchange, the telephone on Sergeant Berge's desk rang and he answered it. Commander Austin told Sergeant Berge that his conversation was not over and to hang up the phone so that they could talk. Sergeant Berge did not hang up the phone and told Commander Austin that he should leave the office. During this exchange, Commander Austin was still standing in the doorway of the Sergeants' Office. (Transcript, 9/23/20, pp. 16-17).

66.     Sgt. Tyson did not observe Commander Austin put his foot or leg up on Sergeant Berge's desk or thrust his crotch toward Sergeant Berge. (Transcript, 9/23/20, p. 18).

67.     Sgt. Tyson left the Sergeants' Office to go into the squad room to conduct roll call for the oncoming shift. Prior to leaving the office, he heard Commander Austin tell Sergeant Berge that he was relieved of his duties. Sergeant Berge did not respond to this statement from Commander Austin. When Sgt. Tyson left the Sergeant's Office, Sergeant Berge was still seated at his desk. Sgt. Tyson told Sgt. Klopp to go into the Sergeants' Office to see if he could help. (Transcript, 9/23/20, pp. 18-19)

68.     Sgt. Tyson left the office to conduct the roll call. On his way to the podium in the squad room, Sgt. Tyson told Sgt. Klopp to see if there was a problem in the Sergeants' Office. Sgt. Tyson testified that from the squad room he could see into the Sergeants' Office and observed Commander Austin standing near where he was standing when Sgt. Tyson left the office and Sergeant Berge was now standing about one foot away from Commander Austin. (Transcript, 9/23/20, p. 20-21).

9

DEFENDANTS 002064

69.   On cross-examination, Sgt. Tyson testified he was sitting in the Sergeants' Office for about ten minutes before Commander Austin came in. Sgt. Tyson did not observe Sergeant Berge to be angry. He did not recall any conversation with Sergeant Berge. It did appear to Sgt. Tyson that Sergeant Berge was tired. It was the end of his shift. Sgt. Tyson did not believe Sergeant Berge was intoxicated. (Transcript, 9/23/20, pp. 23-25).

70.   Sgt. Tyson believed Commander Austin gave Sergeant Berge a direct order to hang up the telephone after it rang. Sgt. Tyson believed that Commander Austin was in the office for about 5 minutes prior to Sgt. Tyson leaving to go to the squad room. Sgt. Tyson did not see or hear Sergeant Berge threaten Commander Austin. Commander Austin told Sergeant Berge that the office was not his office, but the Police Departments' office when Sergeant Berge told him to leave. (Transcript, 9/23/20, pp. 28-30).

71.   Sgt. Tyson testified that when Commander Austin tried to talk to Sergeant Berge, Sergeant Berge mumbled something Sgt. Tyson could not understand. Sgt. Tyson prepared a report of the incident right after he completed the shift briefing. (Transcript, 9/23/20, pp. 31-32).

72.   Chief of Police Frank Kosman was called as a witness. Chief Kosman has been the Chief of Police in Kankakee since May of 2019. Prior to becoming the Kankakee Police Chief, he was a police officer in the Village of Bensenville, rising to the level of Chief there also. He served as the Bensenville Police Chief for sixteen years, until October of 2018. (Transcript, 9/23/20, p. 40).

73.   The Kankakee Police Department maintains a set of policies that are provided to every officer electronically. If the policies are amended or supplemented, those amendments or supplements are provided to the members of the Police Department. Officers are charged with knowing the policies. There are approximately 700 pages in the policy manual. (Transcript, 9/23/20, pp. 41-42; Chief's Exhibit #3).

74.   The Chain of Command within the Kankakee Police Department includes the Chief of Police, Deputy Chief of Police, two commanders, lieutenants, sergeants, and patrol officers. The Police Department is a paramilitary organization in which it is expected that subordinates will follow orders from their superiors. The Chief defined insubordination as the disobedience of or the failure to follow a lawful order. (Transcript, 9/23/20, pp. 42-44).

75.   On July 18, 2020, Chief Kosman was on duty and in attendance at a preplanned peaceful protest march taking place in the City of Kankakee. The Chief was in uniform and operating an unmarked police car. Sgt. Miller, a traffic unit Sergeant, and another patrol officer were also assigned to assist at the march. Both the Sgt. and the patrol officer were in uniform and in marked police vehicles. Chief Kosman testified that, based

10

DEFENDANTS 002065

on the expected size and peaceful nature of the march, he and the other two officers would be sufficient to assist with the march. (Transcript, 9/23/20, pp. 44-47).

76. The march started at Bird Park and went across several City streets and ended at the Kankakee County Courthouse. There were approximately 20 marchers and two cars in the group by the time they arrived at the Courthouse. The Chief testified that about half of the marchers were children or teenagers. (Transcript, 9/23/20, pp. 47-48).

77. Chief Kosman first observed Sergeant Berge in the area of the march near Washington Street. Sergeant Berge was on foot near an alley that ran into Washington Street. Chief Kosman had not assigned Sergeant Berge to the protest detail, nor requested his presence in the area of the protest. Chief Kosman was not aware of any other request for Sergeant Berge to assist with the march. He did not observe Sergeant Berge take any action to assist with traffic or crowd control. (Transcript, 9/23/30, pp. 49-51).

78. At Dearborn and Merchant Streets, Chief Kosman got out of his squad car to assist with traffic direction because the march was backing up traffic in the area. At that time, he observed Sergeant Berge sitting on a half wall of a building at the northeast corner of the intersection. Sergeant Berge was swaying back and forth and kicking his feet. Chief Kosman did not hear Sergeant Berge make any comments to the marchers. (Transcript, 9/23/20, p. 52.)

79. Chief Kosman returned to his vehicle and followed the marchers to the County Courthouse. At the Courthouse, he parked his vehicle on the east side of the Courthouse and Sgt. Miller parked his vehicle behind the Chief's car. The protestors moved to the front of the courthouse. At that time, Chief Kosman observed Sergeant Berge walking in the grassy area of the Courthouse toward the front of the building where the marchers were gathered. Chief Kosman got out of his car and called to Sergeant Berge and told him to stop and go back to his car. Chief Kosman testified that he was approximately 2 car lengths from Sergeant Berge when he yelled at him to return to his car. (Transcript, 9/23/20, pp. 53-54).

80. Chief Kosman testified that he repeated himself several times and on the last time, he told Sergeant Berge that it was a direct order that he return to his squad car. The Chief testified that he did not want Sergeant Berge getting mixed in with the protestors. When Chief Kosman yelled at him, Sergeant Berge looked in the direction of the Chief, turned away and waved his arm in a downward motion. (Transcript, 9/23/20, pp. 54-56).

81. Chief Kosman turned to Sgt. Miller who was still sitting in his squad car and asked if he had seen what Sergeant Berge did. Sgt. Miller stated that he had not seen it. Chief Kosman then told the Sergeant about the order to Sergeant Berge to return to his car and Sergeant Berge's apparent disregard of that order and his insubordination. Sgt.

11

DEFENDANTS 002066

Miller said to the Chief that he would go talk to Sergeant Berge. (Transcript, 9/23/20, pp. 57-58).

82. Chief Kosman testified that he saw Sgt. Miller approach Sergeant Berge near the front of the Courthouse where the protestors had gathered. Sergeant Berge then began walking south away from the front of the Courthouse. As he was walking, Chief Kosman approached him and told Sergeant Berge that he should return to his squad car, leave the area and return to the police station. Chief Kosman relieved Sergeant Berge of his duties and ordered him to report to the Chief's Office on Monday morning at 10:00 a.m. (Transcript, 9/23/20, pp. 58-60).

83. After Chief Kosman told Sergeant Berge to leave the area, he did not leave. Sergeant Berge told Chief Kosman that he did not have to leave the area because the order to leave was an unlawful order and that he (Sergeant Berge) was only in the area to visit with the children. Chief Kosman informed Sergeant Berge that his order was not unlawful, and that Sergeant Berge was ordered to leave the area and return to the station. (Transcript, 9/23/20, p. 60).

84. Chief Kosman stated that Sergeant Berge still did not leave the area but addressed Chief Kosman and told him that he was a poor leader. Chief Kosman told Sergeant Berge that in his 34 years of law enforcement experience, he had never witnessed such insubordination. Sergeant Berge then told Chief Kosman that maybe it was time for the Chief to retire. Chief Kosman told Sergeant Berge that maybe it was time for him to find another job. (Transcript, 9/23/20, pp. 60-61).

85. Sergeant Berge did not leave the area after that conversation. At that time, Lt. Passwater, the day shift commander, arrived at the Courthouse. The Chief had called Lt. Passwater and asked him to come to the Courthouse. When Lt. Passwater arrived at the Courthouse, Chief Kosman told him of the insubordination of Sergeant Berge. Chief Kosman again told Sergeant Berge to leave the area and return to the station and that he was relieved of duty in the presence of Lt. Passwater. (Transcript, 9/23/20, pp. 62-63).

86. Sergeant Berge still did not leave but asked Lt. Passwater what he should do. Lt. Passwater told him that he should listen to the Chief of Police. Sergeant Berge then returned to his squad car and left the area. (Transcript, 9/23/20, p. 63).

87. Chief Kosman testified that on July 18th he was aware of the incident which occurred on July 15th between Commander Austin and Sergeant Berge. Commander Austin had personally reported the incident to the Chief at about 5:00 p.m. on the 15th. Commander Austin summarized the events of the July 15th incident for the Chief. Commander Austin

12

DEFENDANTS 002067

told the Chief that he felt Sergeant Berge was being insubordinate and that he had relieved Sergeant Berge of duty. (Transcript, 9/23/20, pp. 70-72).

88.   Chief Kosman met with Sergeant Berge in his office on Monday, July 20th. At that time Chief Kosman gave Sergeant Kosman a written order placing him on paid administrative leave. Sergeant Berge was accompanied to this meeting, but Chief Kosman could not remember who was with him. (Transcript, 9/23/20, pp. 73-74; Chief's Exhibit #4).

89.   After meeting with Sergeant Berge, Chief Kosman contacted Lt. Timothy Bukowski of the Kankakee County Sheriff's Police Department. Chief Kosman contacted the Sheriff's Department to request copies of video camera footage from the cameras mounted around the Courthouse. The Sheriff's Department has responsibility for the maintenance of the Courthouse including the video camera system. Chief Kosman met with Lt. Bukowski and obtained a copy of the video records from the cameras at the Courthouse for the time frame on the day of the march. (Transcript, 9/23/20, pp. 74-75; Chief's Exhibit #7).

90.   Chief Kosman ordered an interrogation of Sergeant Berge under the terms of the Illinois Uniform Peace Officers' Disciplinary Act. The Chief directed that a Notice of Interrogation be prepared and served on Sergeant Berge. (Transcript, 9/23/20, pp. 76-78; Chief's Exhibit #5).

91.   The interrogation of Sergeant Berge took place on July 30, 2020 at the Police Department. Prior to the interrogation, Sergeant Berge had not attempted to contact the Chief to discuss any of the incidents. Sergeant Berge was under oath during the interrogation and a transcript was made of the proceeding. Chief Kosman expected Sergeant Berge to answer the questions posed to him truthfully. (Transcript, 9/23/20, pp. 78-80; Chief's Exhibit #6).

92.   During the interrogation, Sergeant Berge claimed that Commander Austin was the aggressor during the confrontation in the Sergeants' Office on July 15th. Chief Kosman testified that he was not aware of any sexual harassment complaint filed by Sergeant Berge against Commander Austin. After the interrogation, Chief Kosman directed that charges be prepared seeking Sergeant Berge's termination of employment. (Transcript, 9/23/20, pp. 79-80).

93.   At this point in his case, Chief Kosman played the video clips from the cameras at the Courthouse. The clips were admitted into evidence as Chief's Exhibit #7. There was no sound to any of the videos, only pictures. The videos are from 4 separate cameras and show various views of the Courthouse on the morning of July 18th. From the camera looking southeast toward Indiana and Merchant Street, Sergeant Berge can be seen arriving in his police vehicle, exiting the vehicle, and walking toward the front of the

13

DEFENDANTS 002068

Courthouse. Chief Kosman is seen in his police car. As Sergeant Berge walks by the Chief's car, he appears to wave his hand twice toward the Chief. Later in this same video, the video shows Chief Kosman and Sergeant Berge near each other having a conversation. (Transcript, 9/23/20, pp. 81-87; Chief's Exhibit #7).

94. A second view, shown looking north shows Chief Kosman getting out of his vehicle and approaching Sergeant Berge. This video also shows the two having a discussion. (Transcript, 9/23/20, pp. 88-89).

95. A third video showed the area on the north side of the Courthouse where the marchers were gathered. Sergeant Berge can be seen interacting with protestors. Sgt. Miller can also be seen approaching Sgt. Berge and patting him on the back. Sergeant Berge then turns and heads back toward his squad car. (Transcript, 9/23/20, pp. 88-89).

96. Chief Kosman testified that based on the answers given by Sergeant Berge during the interrogation, he believed Sergeant Berge was not being truthful. This included Sergeant Berge's statement that he did not hear Chief Kosman call out to him outside the Courthouse. (Transcript, 9/23/20, pp. 93-95).

97. Chief Kosman testified that he filed charges seeking the termination of Sergeant Berge because of the untruthfulness and the impact of the incidents of insubordination on the ability of the Police Department to function. (Transcript, 9/23/20, pp. 92-95).

98. On cross-examination, Chief Kosman testified that he ordered an interrogation of Sergeant Berge under the terms of the Uniform Peace Officers Disciplinary Act and that Sergeant Berge was served with a Notice of the Interrogation on July 24, 2020. The Chief testified that the purpose of the interrogation was to ask Sergeant Berge what had happened during the incidents in question. The interrogation would allow Sergeant Berge to provide information regarding the incidents. (Transcript, 9/30/20, pp. 99-103).

99. Chief Kosman prepared the charges after the interrogation of Sergeant Berge. The interrogation was the first opportunity for Sergeant Berge to present his version of the events of July 15th and July 18th. (Transcript, 9/30/20, p. 105).

100. Chief Kosman testified that there were two orders that Sergeant Berge violated on July 18th outside the courthouse. The first order was when the Chief told Sergeant Berge to return to his squad car and leave the area. This took place as Sergeant Berge was walking toward the demonstrators at the front of the courthouse. The second order was for Sergeant Berge to leave the area, return to the station and that he was relieved of duty. This took place after Sergeant Berge returned to the area of his squad car from the front of the courthouse. (Transcript, 9/30/20, pp. 106-107).

101. Sergeant Berge, through his attorney, questioned the ability of Sergeant Berge to adequately defend himself due to the lack of information about the specifics of the

14

DEFENDANTS 002069

charges. (Transcript, 9/30/20, pp. 108-110; See Motion to Dismiss and Motion for Bill of Particulars filed by Sergeant Berge).

102. Chief Kosman testified that Sergeant Berge made untruthful statements during the interrogation. Those statements included Sergeant Berge not seeing Chief Kosman at the courthouse and not hearing the Chief tell him not to go toward the front of the courthouse. (Transcript, 9/30/20, pp. 111-112).

103. When Chief Kosman questioned Sergeant Berge as to why he had not listened to the Chief's direction to not go to the front of the courthouse, Sergeant Berge told him he believed it was an unlawful order. (Transcript, 9/30/20, p. 116).

104. Chief Kosman testified that Count I of the charges against Sergeant Berge concerned the insubordination to Commander Austin that took place in the Sergeant's office on July 15, 2020. The acts of insubordination included his refusal to leave the Sergeants' Office, his failure to hang up the telephone, his failure to respond to Commander Austin, and Sergeant Berge's statement that Commander Austin had not done anything in three years. (Transcript, 9/30/20, pp. 128-131).

105. After the incident at the protest march on July 18, 2020, Chief Kosman sent a text message to Commander Austin informing the Commander that he had just ordered Sergeant Berge to go home based on his insubordination and that Sergeant Berge was to report to the Chief's Office on Monday, July 19th at 10:00 a.m. Chief Kosman also told Commander Austin that he was planning to put Sergeant Berge on Administrative Leave and seek his termination. (Transcript, 9/30/20, pp. 135-136).

106. Chief Kosman was questioned as to whether or not the noise of the protestors might have prevented Sergeant Berge from hearing the Chief's directive to not go toward the front of the courthouse. The Chief testified that he did not think the noise of the protestors or any police radio traffic would have interfered with the Sergeant's ability to hear him. (Transcript, 9/30/20, pp. 139-141).

107. Regarding the investigation of the insubordination to Commander Austin, Chief Kosman testified that Commander Austin gathered the reports from other Police Department members who were present, and City Inspector Bartlett was asked to review the documents and assist the City Attorney in conducting the interrogation. (Transcript, 9/30/20, pp. 142-143).

108. Chief Kosman agreed that it was not optimum for Commander Austin to conduct the investigation of the incident in which he was involved. (Transcript, 9/30/20, p. 146).

109. In a memo dated July 16, 2020, Commander Austin mentioned that Sergeant Berge had been insubordinate to another minority supervisor. Chief Kosman testified that he was not aware of any further investigation of that statement. (Transcript, 9/20/30, pp. 150-152; Respondent Exhibit #1).

15

DEFENDANTS 002070

110. Chief Kosman was asked if he was aware of a charge of racial discrimination being filed by Sergeant Berge against the City of Kankakee. Chief Kosman testified that he was not aware of any such charge being filed, (Transcript, 9/30/20, pp. 154-156).

111. Chief Kosman testified that he informed the Mayor that he was filing charges seeking Sergeant Berge's termination. Chief Kosman did not seek the Mayor's approval and the Mayor played no part in the investigation of the allegation against Sergeant Berge. (Transcript, 9/30/20, p. 157).

112. Chief Kosman testified that the Kankakee Police Department tries to become part of the community and that it is to the Department's benefit to do so. This concept is presented in training sessions attended by Department personnel. (Transcript, 9/30/20, pp. 158-160).

113. On redirect examination, Chief Kosman testified that on July 20, 2020 he met with Sergeant Berge to place him on Administrative Leave. In the written order placing Sergeant Berge on Administrative Leave, sections of the Kankakee Police Department Rules and Regulations which the Sergeant was alleged to have violated were listed. (Transcript, 9/30/20, pp. 162-164; Chief's Exhibit #4).

114. In response to questions from Commissioner Davis and Commissioner Yates, Chief Kosman testified that insubordination in a paramilitary organization like a police department can affect the ability of the organization to do its job. The Chief also testified that he followed the concept of progressive discipline as required by Police Department policy and did take into consideration Sergeant Berge's past record in making a determination as to what discipline would be appropriate. (Transcript, 9/30/20, pp. 176-186).

115. Sergeant Paul Berge testified that he served the Kankakee Police Department since 2006. During his service he was a member of the S.W.A.T. Mobile Field Force. He also served in the Kankakee Area Metropolitan Enforcement Group (KMEG), a joint drug enforcement operation. During his service in those organizations, his integrity was never questioned. Berge was promoted to Sergeant after testing for the position and finishing number one on the promotional list. (Transcript, 9/30/20, pp. 199-203).

116. Sergeant Berge attended a supervisors' training class put on by Northwestern University. This was a one week-long training course attended by other police supervisors. Sergeant Berge identified the curriculum for the training course. (Transcript, 9/30/20, pp. 204-205; Respondent Exhibit #2).

117. On July 15, 2020 Sergeant Berge was working the day shift which started at 5:45 p.m. During his service to the Police Department, Sergeant Berge tried to establish relationships with homeless people in the City of Kankakee. On July 15th, he had taken

16

DEFENDANTS 002071

two homeless individuals to the police station to have them assist with washing cars at the station. (Transcript, 9/30/20, pp. 207-211).

118.  On July 15, 2020 at near the end of the day shift, Commander Austin came to the Sergeants' Office and asked Sergeant Berge about the homeless people who gathered at Hickory and Dearborn in downtown Kankakee. Commander Austin inquired about whether or not any tickets for open alcohol were issued at that location. Commander Austin told Sergeant Berge that the Department received complaints regarding the homeless people in that area and that tickets should be issued if violations of City ordinances were observed. (Transcript, 9/30/20, pp. 211-212).

119.  Sergeant Berge testified that at the time Commander Austin came to the Sergeants' Office he was not intoxicated and that he was never intoxicated on duty. He also stated that he was not sleeping when Commander Austin came into the office. (Transcript, 9/30/20, p. 212).

120.  Sergeant Berge told Commander Austin that he was not going to write the homeless people tickets because he was trying to build a relationship with them and that they would not pay the tickets. Commander Austin became enraged with this answer. Sergeant Berge thought that building the relationship would produce better results with the homeless than writing them tickets. Sergeant Berge felt that it was his job to question how things were done and to try to improve procedures. (Transcript, 9/30/20, pp. 213-214).

121.  Sergeant Berge testified that Commander Austin became enraged with him and began to get loud. Commander Austin took issue with Sergeant Berge questioning him about issuing the citations to the homeless. Commander Austin put his foot up on a chair near the Sergeant's desk. Commander Austin thrust his crotch toward Sergeant Berge and postured. Commander Austin was approximately three feet from Sergeant Berge when he did this. (Transcript, 9/30/20, pp. 216-217).

122.  Commander Austin told Sergeant Berge that he was relieved of duty. Sergeant Berge testified that he did not know what was going on and closed his eyes and said a prayer. Sergeant Berge felt that Commander Austin wanted to fight with him. Commander Austin called his name and knocked on the desk. Sergeant Berge opened his eyes and told Commander Austin that he was not asleep but just tired. (Transcript, 9/30/20, pp. 218-219).

123.  Sergeant Klopp came into the office and then left to start the afternoon shift. On his way out, Sergeant Klopp closed the door to the office. Sergeant Tyson was still in the Sergeants' Office. When Sergeant Tyson left the office, Sergeant Berge stood up

17

DEFENDANTS 002072

because he was afraid Commander Austin was going to punch him. (Transcript, 9/30/20, p. 220).

124. Sergeant Berge did not recall answering the telephone when Commander Austin was talking to him. He testified that Commander Austin told him he was relieved of duty and to go to the Commander's Office. Sergeant Berge stated that he did not go to the Commander's Office because he was afraid the Commander was trying to set him up. He also testified that he did not leave the Sergeants' Office as ordered because he did not understand why the Commander was telling him to leave. (Transcript, 9/30/20, pp. 221-223.)

125. On July 18, 2020, Sergeant Berge was on duty working the day shift. His duties that day were general supervision of the patrol officers. He had no specifically assigned duties or restrictions. (Transcript, 9/30/20, p. 224).

126. Sergeant Berge was aware that a protest march was scheduled for that morning. Sergeant Berge stated that he drove by the march and saw that it was 15 or 20 people, and most were young children. When the march was near East and Station Streets, Sergeant Berge parked his car and got out to wave and clap for the marchers. When the march again stopped near East and Station Street, Sergeant Berge again parked his car and got out to watch the marchers. Sergeant Berge took off his outer vest so that he would not look as militaristic to the marchers. He sat on a half-wall near the newspaper office. While there he talked to the marchers and invited them to look inside his squad car. (Transcript, 9/30/20, pp. 225-228).

127. Sergeant Berge followed the march to the Courthouse. At the Courthouse he got out of his car to walk toward the front of the Courthouse where the marchers were assembling. When he neared the front of the Courthouse, Sergeant Miller told him that Chief Kosman did not want him in that area. Sergeant Berge testified that prior to talking to Sergeant Miller, he had not seen or talked to Chief Kosman in the area of the Courthouse. (Transcript, 9/30/20, pp. 228-229).

128. When he was walking back to his car, the Chief confronted him. The Chief was loud and said that he was giving Sergeant Berge orders. The Chief told him that he did not want him going near the protestors. Sergeant Berge said that he did not hear the Chief tell him anything. Sergeant Berge told the Chief that he could not stop him from going up to the protest and talking to the kids. The Chief told him to go home and that he was suspended. Sergeant Berge did not understand why the Chief was telling him these things. (Transcript, 9/30/20, pp. 230-232).

18

DEFENDANTS 002073

129. Sergeant Berge did not leave the area immediately because he was trying to get clarification as to what he had done wrong. He also wanted direction from his Shift Lieutenant, Lt. Passwater. (Transcript, 9/30/20, p. 232).

130. Sergeant Berge testified that he gave truthful answers during his interrogation and had not made any willful false statements. (Transcript, 9/30/20, pp. 232-233).

131. On cross examination, Sergeant Berge testified that he was aware of the policies of the Kankakee Police Department and that there was a chain of command within the Police Department. The policies of the Department are developed in conjunction with Lexipol, a commercial company. (Transcript, 9/30/20, pp. 233-236).

132. Sergeant Berge testified that whether an officer was insubordinate in not following an order would depend on what the order is. Sergeant Berge testified that he did not know where that understanding was found in the Department policies. (Transcript, 9/30/30, pp. 241-242).

133. Sergeant Berge testified that one of the purposes of KMEG was to stop illegal drug activity. Sergeant Berge was asked about his removal from the KMEG unit. In KMEG, he was supervised by Master Sergeant Aaron Harsey of the Illinois State Police and Lt. Chris Kidwell of the Kankakee Police Department. Lt. Kidwell received a call from Sergeant Berge's then girlfriend (now wife) indicating that Sergeant Berge was using non-prescribed steroids. The Kankakee Police Chief at the time, Larry Regnier, inquired about the drug use and Sergeant Berge admitted to using the non-prescribed steroids. Sergeant Berge was sent for a drug test, placed on administrative leave, and removed from the KMEG unit. (Transcript, 9/30/20, pp. 245-250).

134. Sergeant Berge stated that Sergeant Tyson told him about an incident in which Sergeant Tyson was upset because his job was threatened if he did not make a proper statement in an investigation being conducted by then Chief Dumas. (Transcript, 9/30/20, p. 251).

135. Sergeant Berge testified that Sergeant Klopp was not present in the Sergeants' Office when Commander Austin put his foot on the chair near Sergeant Berge's desk. (Transcript, 9/30/20, p. 253).

136. Sergeant Berge testified that he did not prepare a complaint or report of sexual harassment based on Commander Austin's activities of thrusting his crotch toward the Sergeant's face. (Transcript, 9/30/20, pp. 254-256).

137. Sergeant Berge testified that he was unaware of any Policy regarding a commanding officer telling him he was relieved of duty and that he was confused as to how a discussion of his not writing City ordinance tickets led to him being sent home. (Transcript, 9/30/20, pp. 259-260).

138. Sergeant Berge testified on cross examination that when he arrived at the Courthouse at the end of the march, that he did not see Chief Kosman and that when he turned in the

19

direction of where the Chief's car was, he was attempting to adjust the volume on his portable radio. The noise was loud and the volume of the radios is poor and Sergeant Berge stopped to listen to the radio to make sure he had not missed any calls. (Transcript, 9/30/20, pp. 262-263).

139.  Sergeant Berge testified that when he talked to Chief Kosman at the rear of the Courthouse, Chief Kosman was extremely upset with him and told him that he was not listening to the Chief. Sergeant Berge tried to get an explanation from the Chief as to why he was ordering him to leave the area. (Transcript, 9/30/20, pp. 264-266).

140.  In response to a question from Commissioner Bessant, Sergeant Berge testified that he received training which stressed the need for police officers to find alternatives in dealing with people. Based on that class, Sergeant Berge thought Commander Austin's order to write tickets to the homeless people was unethical and immoral. Sergeant Berge testified that he had never been put in a situation of challenging an order that he thought was improper and, in the past, these situations were worked out among the officers. (Transcript, 9/30/20, pp. 266-268).

141.  In response to a question from Commissioner Landwehr, Sergeant Berge testified that he could not remember Commander Austin talking with him earlier in the day on July 15th about issuing tickets or checking on the homeless people in the area of 400 South Dearborn. (Transcript, 9/30/20, pp. 270-272).

142.  In response to another question from Commissioner Landwehr, Sergeant Berge testified that he filed an Equal Employment Opportunity Commission (EEOC) complaint against the City based on allegations of being targeted with employment actions based on his race. Sergeant Berge offered to make his complaint part of the record of this hearing, but the Commission denied that request. (Transcript, 9/30/20, pp. 275-277).

143.  Sergeant Berge offered a Power Point presentation from the Illinois State Police entitled Procedural Justice and Police Legitimacy in support of his testimony regarding his wish to treat the homeless people differently than Commander Austin had told him to do. The Commission determined that this material was not relevant to their deliberations and denied the request to make the Power Point presentation part of the record. (Transcript, 10/14/20 (Closed Session), pp. 7-12).

## DECISION

1.  The Board of Fire and Police Commissioners heard the testimony Commander Austin, Sergeant Klopp, Lieutenant Passwater, Sergeant Tyson, Chief Kosman and Sergeant Berge. The Board admitted into evidence Board Exhibit 1; Chief's Exhibits 1-7; Respondent's Exhibits 1-3. The Board also considered the Motion for a Bill of Particulars

20

DEFENDANTS 002075

filed by Sergeant Berge and the Response to the Motion for Bill of Particulars filed by Chief Kosman. (Transcript, 10/14/20, pp. 2-3).

2.  The Board deliberated on the evidence and testimony presented in closed session as authorized by Section 2(c)(1) of the Illinois Open Meetings Act, 5 ILCS 120/2.

3.  Based on those deliberations, the Board of Fire and Police Commissioners of the City of Kankakee finds and decides as follows:

a. The Board has jurisdiction to hear the complaint filed by Chief Kosman against Sergeant Paul Berge and no questions regarding the Board's jurisdiction were raised during the hearing.

b. The Board determined to deny the Motion of the Respondent for a Bill of Particulars finding that the complaint filed in this case by Chief Kosman (Board Exhibit No. 1) adequately apprised Sergeant Berge of the basis of the charges filed against him. Prior to the hearing, Sergeant Berge was provided a Notice of Interrogation (Chief's Exhibit No. 5) and an Interrogation (Chief's Exhibit No. 6) which provided specific information as to the date and time of the alleged violations and the identification of the sections of the Kankakee Police Department policies which were violated. A respondent in an administrative proceeding only need be provided with sufficient information to enable him to prepare a defense. The charges filed by Chief Kosman provided effective notice to Sergeant Berge of the possible bases that this Board might use to decide this matter. *Altman v. Board of Fire and Police Commissioners of Elmhurst, 110 Ill. App 3d 282,284.*

c. The Board of Fire and Police Commissioners of the City of Kankakee finds by a preponderance of evidence that Chief Kosman has proved that Sergeant Paul Berge violated Sections 200.3, 200.3.1, 200.3.3, 341.3.2(k), 341.3.5(i), 341.3.5(g) and 341.3.5(f) by his conduct on July 15, 2020, July 18, 2020, and during the interrogation conducted on July 30, 2020.

4.  Based on the finding that Sergeant Berge committed the violations of Policy alleged in the complaint filed by Chief Kosman, the Board of Fire and Police Commissioners conducted a hearing as to the appropriate penalty to be imposed. Both parties had an opportunity to present written and testimonial evidence in support of their positions on the appropriate penalty. (See Chief's Exhibits in Aggravation, Nos. 1-3; Respondent's Exhibits in Mitigation 1-9). Chief Kosman offered an additional Exhibit, Exhibit No. 4, but after an objection by Sergeant Berge, the Commission determined that Exhibit No. 4 would not be admitted. (See Transcript, 12/01/20, pp. 19-27). No additional witnesses or testimony was presented on the issue of the applicable penalty The Board did hear the

21

DEFENDANTS 002076

arguments of counsel for the Chief and Sergeant Berge on the issue of the appropriate penalty.

5. Prior to the penalty phase of the hearing, Respondent, Sergeant Paul Berge filed a Motion to Nullify the Decision, Strike the Charges and Order Immediate Reinstatement. Chief Kosman objected to the Motion but did not file any written response. At the hearing on December 1, 2020, the Board of Fire and Police Commissioners denied the Motion to Nullify the Decision, Strike the Charges and Order Immediate Reinstatement finding that Sergeant Berge received a fair hearing on the charges filed against him and that no individual member of the Board or the Board itself was biased against Sergeant Berge or denied him his due process rights. (Transcript, 12/01/20, p. 64).

6. After deliberating in closed session as authorized by Section 2(c)(1) of the Illinois Open Meetings Act, 5 ILCS 120/2, the Board of Fire and Police Commissioners of the City of Kankakee, finds that based on its findings of insubordination and untruthfulness when combined with prior disciplinary action imposed on Sergeant Berge that cause exists to terminate his employment as a Police Sergeant for the City of Kankakee. Cause is defined as a substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. *Kappel v. Police Board of the City of Chicago, 220 Ill. App 3d 580.*

## ORDER

**It is hereby ORDERED that Sergeant Paul Berge is immediately terminated from this position of Police Sergeant for the City of Kankakee.**

This **ORDER** is effective this 1st day of December 2020.

Dr. Willie Davis, Chairman                         Mr. Nickey Yates, Secretary

22

**DEFENDANTS 002077**

Ms. Dawn Landwehr, Member

Ms. Cortney Bessant, Member

Mr. Mario Flores, Member

23

**DEFENDANTS 002078**